420 P.2d 259

Mary LINDHARTSEN, Personally, as the widow of Ogden Lindhartsen, Deceased, Mary Lindhartsen, as Guardian Ad Litem of Mary Ellen Lindhartsen, Kathy Lindhartsen, Gregory Lindhartsen, John Lindhartsen and Cynthia Lindhartsen, Minors, and Gary Lindhartsen, Larry Lindhartsen and Karsen Lindhartsen, being all the Heirs at Law of Ogden Lindhartsen, Deceased, Plaintiffs-Respondents,

v.

Ronald Joseph MYLER, Defendant-Appellant,

and

Ralph Myler, Sr., and Luther Satterfield, Defendants.

No. 9733.

Supreme Court of Idaho.

Nov. 16, 1966.

Hugh C. Maguire, Jr., and Ralph H. Jones, Pocatello, for appellant.

Black & Black, Pocatello, for respondents.

McQUADE, Justice.

This action is brought by the wife and children of the deceased, Ogden Lindhartsen, for damages caused by his death. The trial court rendered judgment in favor of Lindhartsen's children and wife in the sum of $75,257.

During the early evening of November 14, 1963, Luther Satterfield drove his car into the rear of a truck driven by appellant, Ronald Joseph Myler. Both vehicles were proceeding southerly on State Highway 39 in the unincorporated village of Rockford. Ogden Lindhartsen was riding in the right front seat of the car and his death was occasioned by the collision.

On the day of the accident it had become sufficiently dark by 5:55 p. m., the moment of impact, that auto lights were required for illumination of the roadway. There was no atmospheric condition which otherwise limited visibility, and the paved roadway surface at the location of the accident was bare and dry.

The record discloses a conflict of evidence regarding absence of proper lighting on both the car and the truck at the time of the collision. The trial court, sitting without a jury, found that at the time of the collision, the car did not have its lights burning; that the truck had its clearance lights off and was equipped with a defective tail lamp.

The accident occurred on the opposite side of the highway from a service station at Rockford. The station area was then lighted by a blue "radium" night light and by four floodlights positioned around the station building. Two of the floodlights pointed out towards the highway. From the point of impact there was uninterrupted visibility for a quarter of a mile to the north, beyond which there was a long sloping curve.

On the day of the accident, appellant and his brother, Ralph Myler, owner of the truck involved in the accident, assisted by Ralph Myler's wife, Barbara K., were harvesting beets on Ralph's farm. During that day appellant was a driver for trucks loaded with beets taken from the farm to a beet dump slightly west of State Highway 39, a few hundred yards south of the scene of the accident. To reach the beet dump from the farm, it was necessary to travel part of the way southerly on State Highway 39, passing the point where the accident occurred. The truck involved in the accident contained the last load of beets to leave the farm that day. Appellant and Barbara K. agreed that day that if she would drive this truck from the farm towards the beet dump, appellant would meet her en route (before she reached the dump) and trade his empty truck for the loaded one, and that she would then drive the empty truck back to the farm while he drove the full truck to the dump.

Pursuant to this agreement, Barbara K. had driven the truck involved in the accident from the farm onto the highway in the southbound lane at a point directly across from the above-mentioned service station. A few minutes before the collision, she parked the truck at that point on the edge of the highway and left its motor running. Appellant drove the empty truck into the station area from the northbound lane of the highway and parked. He crossed the highway to the truck which Barbara K. had just parked, looked along the roadway to the rear of the truck, and, observing no oncoming traffic, entered the truck. He had proceeded about 90 feet at a very slow speed when the collision occurred.

The trial court found that appellant Ronald Joseph Myler was negligent in driving the truck with its clearance lights off at a time that required clearance lights to be on.

I.C. §§ 49–802 and 49–809(b).[1] Ralph Myler, owner of the truck, was found to be negligent because the truck's single tail lamp was inadequate under the state law. I.C. § 49–805. Appellant, as operator of the vehicle, was also required by I.C. § 49–805 (a) to operate the truck with a properly operable tail lamp. The trial court made five specific findings of negligence against Luther Satterfield in regard to the operation of his car: (1) headlights not on when required, (2) speed greater than was reasonable and prudent, (3) failure to maintain a proper lookout, (4) that he was under the influence of intoxicants at the time of the accident, and (5) failed to brake or otherwise attempt to take any action to avoid the accident. The trial court found that the negligence of all three defendants had concurred to proximately cause Lindhartsen's death. Only Ronald Joseph Myler appeals from the trial court's judgment for the plaintiffs.

Appellant's ten assignments of error on appeal present two basic contentions for reversal of the trial court's judgment: first, that the record contains no proof of negligence on appellant's part; and second, that there is no proof that his conduct proximately caused the injury.

Appellant argues that respondents failed to present sufficient competent evidence to support their burden of proof on the issue of appellant's negligence. Supporting this argument, appellant contends that the record contains only "negative" testimony that the truck's clearance lights were off immediately preceding the accident and that such "negative" testimony is without weight as a matter of law when confronted with the "affirmative" testimony of Ralph and Barbara K. Myler that the clearance lights were then on.

Regarding the issue of proximate cause, appellant argues the trial court's finding that Satterfield failed to maintain a lookout immediately before the accident conflicts with the court's further finding that the absence of burning lights on appellant's truck concurred in proximately causing the collision. He contends that the two findings are inconsistent and irreconcilable. Appellant also argues that Satterfield's gross negligence was the proximate cause of the collision.

■ The trial court made its finding on substantial, though conflicting, evidence, and this court will not set such finding aside on appeal. I.R.C.P. 52(a); King v. MacDonald, 90 Idaho 272, 410 P.2d 969 (1965).

The trial court found that the truck's clearance lights were not burning immediately prior to the accident. Ralph Myler and Barbara K. Myler both testified they saw the clearance lights illuminated shortly before the accident. Delbert Capson, driving 200 yards behind the Satterfield car, was continuously looking down the straight of way in the direction of the Myler truck prior to the accident and never saw the truck or its lights. Satterfield testified that prior to the accident he never saw the truck or any lights on it. Theo Anderson, owner of the service station across the highway from the point where the accident occurred, twice looked across the road from his service station at the parked truck before the accident but did not notice if its lights were burning. Elda May Murdock, approaching the truck from the opposite direction, did not notice if its headlights or clearance lights were on. As she was about to pass the truck, she saw Satterfield's car strike the truck.

The clearance lights and tail lamp on the truck were not burning immediately after the accident. Theo Anderson testified he installed a clearance light bulb on the truck three days earlier and at that time the headlights and clearance lights were operable. After the accident the wire which was the source of power to the clearance lights was found severed near the

---

1. See I.C. § 49–809(b), but note that in the first sentence of I.C. § 49–809, the reference to I.C. § 49–508 should be to I.C. § 49–808, as provided by Session Laws of 1953, Ch. 273, § 129.

point of impact. While the wire's severance appeared "recent" and the testimony suggests that it was severed near the point of impact, the record contains no direct evidence which established that the collision caused the break. Theo Anderson also testified that the collision could have caused the break in the wire but did not know if such was the fact. Deputy Sheriff Frank Rambough, who investigated the accident, testified that he thought the collision had broken the wire. However, this was only his lay opinion. State Policeman Clarence Norris, who assisted in the investigation, testified that the wire could have been severed prior to the accident. The truck's owner, Ralph Myler, testified that the impact had destroyed the truck's lighting system, although he had never examined the severed wire.

In his memorandum decision the trial judge noted the testimony of the witnesses and found from the exhibits in evidence that the wire was not severed at the point where the auto struck the truck and, therefore, concluded that the break was not caused by the accident.

 Appellant argues that all testimony to the effect that clearance lights on the truck were not seen burning immediately before the accident was negative in character and incompetent. Evidence is admissible where it is shown that the witness was so placed that if the event in question had occurred, he would probably have noticed its occurrence, provided it is an issue in the action which necessarily demands proof of the occurrence or nonoccurrence of that event. This court has held: though negatively phrased, testimony that a witness so placed "did not see" or "did not observe" the occurrence of an event in issue is sufficiently probative to controvert affirmatively phrased testimony by other witnesses that they did observe the event's occurrence and adequately supports a finding that the event did not occur. Kerby v. Oregon Short Line R. R. Co., 45 Idaho 636, 264 P. 377 (1928) (no whistle or bell heard); Jakeman v. Oregon Short Line

R. R. Co., 43 Idaho 505, 256 P. 88 (1927) (no headlight seen, no whistle or bell heard); Fleenor v. Oregon Short Line R. R. Co., 16 Idaho 781, 102 P. 897 (1909) (no headlight seen). See also Bell, Handbook of Evidence for the Idaho Lawyer, pp. 11–12 (1957), and 21 A.L.R.2d 70–77 (1952).

Appellant's second contention on appeal is that Satterfield's negligence was the proximate cause of the accident. Appellant presents a dual argument: that an accident can have but one proximate cause and that even if there could be two proximate causes producing the same injury, Satterfield's failure to maintain a lookout immediately prior to the accident was an intervening cause, leaving appellant's negligence, if any, harmless.

 Unrelated tortious acts of different defendants can concur as proximate causes of an injury. Woodman v. Knight, 85 Idaho 453, 380 P.2d 222 (1963); Hoffman v. Barker, 79 Idaho 339, 317 P.2d 335 (1957); Russell v. City of Idaho Falls, 78 Idaho 466, 305 P.2d 740 (1956); Clark v. Tarr, 75 Idaho 251, 270 P.2d 1016 (1954); Valles v. Union Pac. R. Co., 72 Idaho 231, 238 P.2d 1154 (1951).

In Valles v. Union Pac. R. Co., supra, quoted and approved in Russell v. City of Idaho Falls, supra (78 Idaho at 479, 305 P. 2d 740), this court said:

"* * * where several causes combine to produce injuries, a person is not relieved from liability because he is responsible for only one of them, it being sufficient that his negligence is an efficient proximate cause, without which the injury would not have resulted, * * *." 72 Idaho at 238, 238 P.2d at 1158.

In Hackworth v. Davis, 87 Idaho 98, 390 P.2d 422 (1964), though reversing on other grounds, this court approved the following jury instruction:

"Where the negligence of the person sought to be charged continued and exists up to the time of injury the concurrent negligent act of another is not a superseding cause, but becomes a concurrent

proximate cause. * * * And it is irrelevant in this respect whose negligence was first in time, who was more or who less negligent, or whether one was ordinarily and the other wantonly negligent." 87 Idaho at 105–106, 390 P.2d at 426.

Appellant, however, cites Stearns v. Graves, 62 Idaho 312, 111 P.2d 882 (1941), for the proposition that there can be but one proximate cause of an injury. In *Stearns* this court stated that "there can be but one *proximate* cause" and "generally * * * the final cause immediately antecedent to the infliction of the injury is the *proximate* cause of the injury." (Italics in original) 62 Idaho at 324, 111 P.2d at 886. However, the court merely ruled that a new trial must be granted since instructions and comments made by the trial judge to the jury were misleading and prejudicial. See Valles v. Union Pac. R. Co., supra (72 Idaho at 238–239, 238 P.2d 1154), and Pigg v. Brockman, 85 Idaho 492, 381 P.2d 286 (1963).

Appellant argues that the trial court's finding that Satterfield failed to maintain a lookout immediately prior to the accident cannot be reconciled with the further finding that appellant's negligence was also a proximate cause of the accident. Appellant contends that whether the truck's lights were on was immaterial since it was found that Satterfield had not been maintaining a lookout.

Determination of proximate cause is for the trier of facts, Dewey v. Keller, 86 Idaho 506, 388 P.2d 988 (1964), and this court will not reverse that determination on appeal if it is supported by substantial competent evidence. Anderson v. Blackfoot Livestock Commission Co., 85 Idaho 64, 375 P.2d 704 (1962).

Judgment affirmed.

Costs to respondents.

McFADDEN, C. J., and TAYLOR, SMITH and SPEAR, JJ., concur.