NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by e-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Hillsborough-northern judicial district
No. 2019-0236

ALEXANDER J. WALKER, JR.,

v.

AARON DAY

Argued: January 28, 2020
Opinion Issued: April 14, 2020

Devine, Millimet & Branch, Professional Association, of Manchester (Matthew R. Johnson and Devin K. Bolger on the brief, and Mr. Johnson orally), for the plaintiff.

Boyle | Shaughnessy Law PC, of Manchester (Peter L. Bosse and Jonathan P. Killeen on the brief, and Mr. Killeen orally), for the defendant.

DONOVAN, J. The plaintiff, Alexander J. Walker, Jr., appeals orders of the Superior Court (Nicolosi, J.) dismissing his claim of conspiracy to defame on res judicata grounds after finding privity between the defendant, Aaron Day, and other defendants in a separate defamation action. On appeal, the plaintiff argues that the trial court erred by: (1) deciding the privity issue at the motion to dismiss stage; and (2) applying the First Circuit Court of Appeals' privity standard, rather than New Hampshire precedent, to determine privity. We agree that the trial court erred by applying the privity standard used by the First Circuit, and, therefore, vacate the trial court's ruling and remand.

The record supports the following facts. The plaintiff filed a defamation lawsuit against an individual and his company (defamation defendants). The trial court entered a final judgment in favor of the plaintiff on the issue of liability on May 25, 2017. Following a bench trial on the issue of damages, the court awarded the plaintiff damages in the amount of $5,000,000 on April 12, 2018. The defamation defendants appealed that decision, which was affirmed by this court on February 7, 2019.

On August 31, 2017, while the plaintiff's defamation action was pending, the plaintiff filed a lawsuit against the defendant, alleging a claim of conspiracy to commit defamation and seeking enhanced compensatory damages. The complaint described the defamation, which provided the basis for the conspiracy claim, in much the same terms as the complaint in the separate defamation action, but also alleged facts to support the conspiracy claim. The defendant moved to dismiss the conspiracy action on the grounds of, inter alia, res judicata, arguing, in part, that he was in privity with the defamation defendants for res judicata purposes.

Before ruling on the motion, the court explained that application of res judicata requires a finding of: (1) privity between parties; (2) the same cause of action; and (3) a final judgment rendered in the first action. The court concluded that privity existed due to the nature of the co-conspirator relationship between the defendant and the defamation defendants, and the cause of action was the same, but no final judgment had been rendered in the defamation action at that time. Therefore, the court denied the motion and stayed the case until a final judgment was issued in the defamation action.

The plaintiff moved for reconsideration, arguing that the record at the motion to dismiss stage was insufficient to support a finding of privity, and the court improperly relied upon First Circuit precedent in its ruling. The court denied the plaintiff's motion because it remained convinced that the First Circuit's privity standard, see Airframe Systems, Inc. v. Raytheon Co., 601 F.3d 9, 17-18 (1st Cir. 2010), was appropriate given the circumstances. Further, the court ruled that the plaintiff's argument that privity was improperly determined at the motion to dismiss stage was "a new argument that is not a proper one to raise on reconsideration, and [it was] denied on [that] basis."

On May 16, 2018, the defendant filed a renewed motion to dismiss, which was denied because the defamation action was on appeal with this court. The defendant again renewed his motion after this court affirmed the judgment in the defamation case. The plaintiff used that opportunity to restate the arguments he had advanced previously. Based upon the same reasoning set forth in its prior orders, the trial court granted the motion to dismiss on res judicata grounds, and this appeal followed.

2

We first address the plaintiff's argument that the trial court erred, as a matter of law, by applying the First Circuit's privity standard. The doctrine of res judicata precludes the litigation in a later case of matters actually decided, and matters that could have been litigated, in an earlier action between the same parties for the same cause of action. Sleeper v. Hoban Family P'ship, 157 N.H. 530, 533 (2008). For the doctrine to apply, three elements must be established: (1) the parties must be the same or in privity with one another; (2) the same cause of action must be before the court in both instances; and (3) a final judgment on the merits must have been rendered in the first action. Id. Only privity, the first element, is at issue on appeal. The applicability of res judicata is a question of law that we review de novo. Id.

The plaintiff argues that the trial court erred by applying the First Circuit's standard to determine privity between the defendant and the defamation defendants. In response, the defendant advances three arguments: (1) the trial court's ruling is in harmony with New Hampshire law; (2) the unique circumstances of this case warranted an expanded application of privity; and (3) the interests of judicial economy and finality of litigation are best served by an expanded application of privity. We agree with the plaintiff, and we conclude that the First Circuit's privity standard is inconsistent with New Hampshire law.

We disagree with the defendant's assertion that the trial court's ruling is consistent with the law of res judicata and privity in New Hampshire. Although, under New Hampshire law, res judicata generally does not apply to nonparties to the original judgment, this rule is subject to exceptions. Sleeper, 157 N.H. at 533. Nonparty preclusion may be based on a variety of pre-existing substantive legal relationships between the person to be bound and a party to the judgment. Id. "The substantive legal relationships justifying preclusion are sometimes collectively referred to as privity, although we have used the term more broadly to refer to a functional relationship, in which, at a minimum, the interests of the non-party were in fact represented and protected in the prior litigation." Id. at 534 (quotations and citation omitted); see Aranson v. Schroeder, 140 N.H. 359, 368-69 (1995); Daigle v. City of Portsmouth, 129 N.H. 561, 571 (1987).

By contrast, the First Circuit has "long held that claim preclusion applies if the new defendant is closely related to a defendant from the original action—who was not named in the previous law suit, not merely when the two defendants are in privity." Airframe, 601 F.3d at 17 (quotation omitted). Thus, under the law of the First Circuit, "privity is a sufficient but not a necessary condition for a new defendant to invoke a claim preclusion defense," Airframe, 601 F.3d at 17, whereas New Hampshire law provides that a nonparty is "bound by the doctrine of res judicata only if he is in privity with a bound party." Waters v. Hedberg, 126 N.H. 546, 549 (1985) (emphasis added).

The defendant nonetheless argues that the trial court was justified in adopting the First Circuit's privity standard because res judicata must be determined on a case-by-case basis, and the "unique scenario" of successive litigation against co-conspirators justified an expanded application of privity. Similarly, the trial court determined "that the First Circuit's standard in Airframe is appropriate" because, in the context of "closely related" parties, it strikes the proper balance between allowing a plaintiff the opportunity for full recovery and strategic choices, and the need for finality of judgment, fairness, and judicial economy. We disagree.

We have long adhered to the general rule that plaintiffs may pursue joint wrongdoers successively until the judgment has been satisfied. See Zebnik v. Rozmus, 81 N.H. 45, 47 (1923) ("[T]he rule most widely followed is that judgment and execution against one is not a bar to a judgment against another also liable unless the judgment is satisfied. Such is the law here." (citations omitted)); Fowler v. Owen, 68 N.H. 270, 271 (1895) ("For such acts they were jointly and severally liable. The plaintiff was at liberty to sue either of them separately."); Hyde v. Noble, 13 N.H. 494, 501 (1843) ("The injured party has a right to pursue all who have done the wrong, until he obtains a satisfaction for it."); Snow v. Chandler, 10 N.H. 92, 94 (1839). Of course, that general rule may not apply if the elements for the application of a more specific rule, such as res judicata, are met. However, in light of the general rule, the defendant's argument that the plaintiff should be barred from bringing the conspiracy action against him merely because he could have raised it in the suit against the defamation defendants is not persuasive.

Moreover, we have previously rejected the assertion that co-conspirators, by virtue of their relationship alone, are in privity for preclusion purposes. See Aranson, 140 N.H. at 369. In Aranson, the "trial court apparently agreed . . . that [the defendant] was in privity with the underlying defendants because he . . . acted as a co-conspirator in" creating and presenting a "false" defense in the underlying case. Id. In vacating and remanding the trial court's privity ruling, we observed that the plaintiff presented no evidence to support a finding that the defendant had exerted any control over the underlying litigation such that the defendant should be bound by the determination against the underlying defendants as though he participated in the litigation, and that the relationship of co-conspirators, "standing alone, does not warrant a determination that [the defendant's] involvement in the underlying action was so significant as to constitute control." Id. Similarly, here, neither party's pleading asserted that the defendant exerted any control over the earlier litigation, and his relationship as a co-conspirator with the defamation defendants, standing alone, does not warrant such a finding.

The defendant next argues that Aranson is inapposite because: (1) Aranson involved a plaintiff's use of offensive preclusion, whereas this case involves defensive preclusion; and (2) the conspiracy activity alleged in Aranson

4

occurred during the earlier litigation, not prior to it, as is the case here. The defendant's observations, while accurate, do not render <u>Aranson</u> inapposite. Our decision in <u>Aranson</u> was based upon the relationship that was alleged to have created privity between the parties, not when the wrongdoing occurred. <u>See id</u>. at 368-69. Further, the defendant has offered no persuasive argument as to why the facts of this case compel a different result from the conclusion we reached in <u>Aranson</u>, simply because this case involves defensive rather than offensive preclusion. Thus, the defendant's arguments are unavailing.

The defendant also argues, and the trial court agreed, that the trial court's expanded application of privity best serves the interests of judicial economy and finality of litigation. To be sure, the doctrine of res judicata seeks to "avoid repetitive litigation in order to promote judicial economy and a policy of certainty and finality in our legal system." <u>Osman v. Gagnon</u>, 152 N.H. 359, 362 (2005). These interests, alone, however, cannot be dispositive in all cases. <u>See</u> <u>Northern Assur. Co. of America v. Square D Co.</u>, 201 F.3d 84, 89-90 (2d Cir. 2000) (acknowledging that "the scarcity of judicial resources alone does not justify denying a party the opportunity to litigate a claim" (quotations omitted)). Taking into account our long-standing general rule permitting plaintiffs to pursue joint wrongdoers successively when the judgment has not been satisfied, and our decision in <u>Aranson</u>, we conclude that the interests of judicial economy and finality do not require an expanded application of privity in this case.

Finally, the defendant argues that, even if we reject the First Circuit's privity standard, the trial court's ruling can be upheld on alternative grounds because the defendant and the defamation defendants are in privity under the "substantive legal relationship" exception to the general rule against nonparty preclusion within our res judicata jurisprudence. <u>See</u> <u>Sleeper</u>, 157 N.H. at 533. We disagree.

The United States Supreme Court, as well as this court, has recognized that "nonparty preclusion may be justified based on a variety of pre-existing 'substantive legal relationship[s]' between the person to be bound and a party to the judgment." <u>Taylor v. Sturgell</u>, 553 U.S. 880, 894 (2008) (citation omitted); <u>see</u> <u>Brooks v. Trustees of Dartmouth College</u>, 161 N.H. 685, 690 (2011). In <u>Taylor</u>, the Supreme Court noted that "[q]ualifying relationships include, but are not limited to, preceding and succeeding owners of property, bailee and bailor, and assignee and assignor." <u>Taylor</u>, 553 U.S. at 894; <u>see</u> <u>Sleeper</u>, 157 N.H. at 533 ("Qualifying relationships include that between a property owner and his successor in interest.").

Relying primarily on <u>Taylor</u>, the defendant contends that "[a]lleged co-conspirators satisfy the substantive legal relationship exception" because the relationship is one that rests upon "a theory of mutual agency." However, the relationships identified in <u>Taylor</u> are not premised upon a theory of agency.

Rather, they are rooted in property law and involve relationships in which the parties' legal interests are aligned such that they are nearly indistinguishable. See Taylor, 553 U.S. at 894 ("These exceptions originated as much from the needs of property law as from the values of preclusion by judgment." (quotation omitted)).  The relationship of co-conspirators is not rooted in property law, and while the interests of co-conspirators may align in achieving the conspiracy's goals, we cannot conclude that their legal interests are always similarly aligned.  Therefore, the relationship between co-conspirators, standing alone, does not qualify for the "substantive legal relationship" exception.  There may be circumstances in which co-conspirators qualify for the "functional relationship" exception, see Sleeper, 157 N.H. at 534, but in Aranson we decided that such a relationship is not sufficient in all cases.  Aranson, 140 N.H. at 368-69.

In light of our conclusion that the trial court erred, as a matter of law, by applying the First Circuit's standard to determine whether privity existed in this case, we need not consider the plaintiff's alternative argument that the trial court erred by making its privity determination at the motion to dismiss stage of the litigation.  Accordingly, we vacate the ruling of the trial court and remand for further proceedings consistent with this opinion.

Vacated and remanded.

HICKS, BASSETT, and HANTZ MARCONI, JJ., concurred.